## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RALPH D. MITCHELL**, | Case No. 3:13-cv-00665-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **HOMESALES, INC**., **CHASE BANK USA, N.A.**, and **NORTHWEST TRUSTEE SERVICES, INC.**, | |
| Defendants. | |

John Bowles and Jeffrey A. Myers, BOWLES FERNÁNDEZ LAW LLC, 5200 S.W. Meadows Road, Suite 150, Lake Oswego, OR 97035. Of Attorneys for Plaintiff.

Michael J. Farrell and Michael A. Yoshida, MARTIN BISCHOFF TEMPLETON LANGSLET & HOFFMAN LLP, 888 S.W. Fifth Avenue, Suite 900, Portland, OR 97204; John M. Thomas, RCO Legal, P.C., 511 S.W. Tenth Avenue, Suite 400, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff, Ralph D. Mitchell ("Mitchell"), filed suit in state court against Defendants

Homesales Inc. ("Homesales"), Chase Bank USA, N.A. ("Chase"), and Northwest Trustee

Services, Inc. ("NWTS") (collectively "Defendants") seeking: (1) declaratory relief invalidating

the non-judicial foreclosure sale of his property; and (2) damages for Defendants' alleged breach

PAGE 1 – OPINION AND ORDER

of contract. Defendants timely removed this case to federal court. On July 29, 2013, Mitchell

filed his Amended Complaint. Defendants now move for summary judgment against both of

Mitchell's claims alleged in the Amended Complaint. For the following reasons, Defendants'

motion is granted.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view

the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th

Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of

the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

In September 2006, Mitchell obtained a loan ("the Loan") originated by Chase and signed

a promissory note ("the Note") secured by a trust deed ("the Deed of Trust") to purchase his

home in Clackamas County, Oregon ("the Property"). The Deed of Trust was signed on

September 11, 2006 and recorded on September 15, 2006. It identified Chase as both the lender

and beneficiary. In September 2007, Mitchell defaulted on his loan by failing to make his

required monthly mortgage payments. The parties dispute the cause of Mitchell's default. Mitchell alleges in his Amended Complaint and stated in his deposition that at some point between September 1, 2006 and February 15, 2008, Mitchell was told both in writing and orally by Chase representative Andrew North that Mitchell's monthly payment was increasing from $3,679.33 to more than $8,000. Mitchell argues that this increase drove him into default. In contrast, Defendants argue that Mitchell's default was caused by his dispute with the Oregon Board of Naturopathic Medicine between 2006 and 2007, which caused Mitchell to lose his primary source of income and pay significant legal fees.

As a result of Mitchell's default, NWTS filed a Notice of Default and Election to Sell on February 15, 2008, setting a foreclosure sale date of June 20, 2008. Also on February 15, 2008, Chase assigned its interest in the Property to Chase Home Finance, LLP ("CHF") and filed an Assignment of Deed of Trust in Clackamas County, Oregon. After Mitchell filed for bankruptcy in June 2008, the United States Bankruptcy Court for the District of Oregon stayed the foreclosure sale. Defendants were granted relief from the stay on August 31, 2008. On September 19, 2008, NWTS filed an Amended Trustee's Notice of Sale with the new sale scheduled for October 1, 2008. The Amended Trustee's Notice recited the following default: "failure to pay when due the following sums: monthly payments of $3,639.73 beginning 09/01/07; plus late charges of $0.00 each month beginning 06/16/07; plus prior accrued late charges of $0.00; plus advances of $0.00; together with title expenses, costs, trustee's fees and attorney's fees incurred herein by reasons of said default."[1] Defs.' Ex. 7, ECF 23-7 at 4.

---

[1] The Court notes that the Amended Trustee's Notice of Sale provided slightly different notice terms than the original Notice of Default and Election to Sell and the Trustee's Notice of Sale. *Compare* Defs.' Exs. 4, 6, ECF 23-4 at 1, 23-6 at 3 *with* Defs.' Ex. 7, ECF 23-7 at 4. The original notice recited "failure to pay when due the following sums: monthly payments of $3,639.73 beginning 09/01/07; plus late charges of $181.99 each month beginning 09/16/07; plus

On October 1, 2008, the Property was sold at a Trustee's Sale to Homesales. NWTS and Homesales executed a Trustee's Deed on October 3, 2008, which was recorded on October 7, 2008 in Clackamas County, Oregon. Even after this sale, Mitchell remains in the Property and has not made any further payments.

## DISCUSSION

### A.  Mitchell's Claim for Wrongful Foreclosure

The Oregon Trust Deed Act ("OTDA"), Or. Laws 1959, ch. 625, codified at Or. Rev. Stat. (hereinafter "O.R.S.") § 86.705 to O.R.S. § 86.815, provides an alternative to the judicial foreclosure process. Where a trust deed is used to secure a loan, the trust deed "conveys an interest in real property to a trustee in trust to secure the performance of an obligation the grantor or other person named in the deed owes to a beneficiary." O.R.S. § 86.705(8) (formerly O.R.S. § 86.705(7)).[2] Under the OTDA, a trustee may conduct a non-judicial foreclosure of a trust deed by advertisement and sale when certain conditions are met. *See* O.R.S. § 86.752 (formerly O.R.S. § 86.735, setting out conditions). In addition to these requirements, the OTDA prescribes notice requirements that "protect trust deed grantors from unauthorized nonjudicial foreclosures and sales of property." *Brandrup v. ReconTrust Co., N.A.*, 353 Or. 668, 677 (2013); O.R.S. § 86.764 (formerly O.R.S. § 86.740); O.R.S. § 86.782 (formerly O.R.S. § 86.755).  Judicial involvement is not needed to complete a foreclosure by advertisement and sale, but "the 120-day advance notice period gives a grantor time to seek judicial intervention in certain circumstances." *Brandrup*, 353

---

prior accrued late charges of $0.00; plus advances of $92.75; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default." Defs.' Ex. 4, ECF 23-4 at 1.

[2] In 2013, the Legislative Counsel Committee of the Legislative Assembly of the State of Oregon renumbered portions of Title 9, Chapter 86 in the 2013 Oregon Revised Statutes. The Court cites to the 2013 numbering, but notes the former numbering in parentheticals.

Or. at 677. After the trustee has complied with the statutory notice requirements, and assuming default is not cured, the property may be sold at a public auction to the highest bidder without judicial oversight. O.R.S. § 86.782. After such a sale, the trustee may execute and deliver the deed to the purchaser. O.R.S. § 86.800 (formerly O.R.S. § 86.775). The trust deed must contain, among other information, "a recital of the facts concerning the default, the notice given, the conduct of the sale and the receipt of the purchase money from the purchase." *Id.* After a trust deed is properly recorded, the deed's recitals are prima facie evidence in any court of the truth of the matters set forth therein and are conclusive in favor of a purchaser for value who relies on them in good faith. O.R.S. § 86.803 (formerly O.R.S. § 86.780).

Mitchell's Amended Complaint alleges that Defendants have not met the first of the four prerequisites for a non-judicial foreclosure sale set out in the OTDA, O.R.S. § 86.752(1), which requires that "any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated."[3] Am. Compl. ¶ 38, ECF 10. Mitchell further alleges that pursuant to O.R.S. § 86.771(1) (formerly O.R.S. § 86.745), the notice of sale for the property must "[l]ist the names of the grantor, trustee and beneficiary in the trust deed, and the mailing address of the trustee."[4] Am. Compl. ¶ 31. Mitchell alleges that his loan had in fact been purchased by Wells Fargo Bank, N.A. before the non-judicial foreclosure, and that as a

---

[3] The quoted text is from the 2013 version of O.R.S. § 86.752(1), which is numbered differently but otherwise does not vary from the version in effect when the parties signed the Deed of Trust. *See* O.R.S. § 86.735(1) (2007).

[4] The quoted text is from the 2013 version of O.R.S. § 86.771(1), which is numbered differently but otherwise does not vary materially from the version in effect when the parties signed the Deed of Trust. *See* O.R.S. § 86.745(1) (2007).

beneficiary of the Deed of Trust, Wells Fargo should have been listed in the notice of sale. Am. Compl. ¶¶ 28-37.

Defendants argue that Mitchell's challenge to the non-judicial foreclosure sale is barred by O.R.S. § 86.797 (formerly O.R.S. § 86.770). O.R.S. § 86.797 creates statutory finality, according to Defendants, for non-judicial foreclosure sales where a challenging party has received a notice of sale. The contents of such a notice, Defendants contend, may only be substantively challenged before a non-judicial foreclosure sale.

O.R.S. § 86.797 governs the effect of a sale on a trust deed. In relevant part, it provides:

> (1) If, under ORS 86.705 to 86.815, a trustee sells property covered by a trust deed, the trustee's sale forecloses and terminates the interest in the property that belongs to a person to which notice of the sale was given under ORS 86.764 and 86.774 or to a person that claims an interest by, through or under the person to which notice was given. A person whose interest the trustee's sale foreclosed and terminated may not redeem the property from the purchaser at the trustee's sale. A failure to give notice to a person entitled to notice does not affect the validity of the sale as to persons that were notified.

O.R.S. § 86.797(1). The notice required under O.R.S. § 86.797 is defined by reference to O.R.S. § 86.764 and O.R.S. § 86.774. Relevant to this case, O.R.S. § 86.764 governs the notice that must be provided to the grantor of the trust deed. *See* O.R.S. § 86.764(2)(a). After the notice of default is properly recorded and "at least 120 days before the day the trustee conducts the sale, notice of the sale with the contents described in O.R.S. 86.771 must be served pursuant to ORCP 7D(2) and 7D(3) or mailed by both first class and certified mail with return receipt requested." O.R.S. § 86.764(1).

As the moving party, Defendants must demonstrate that there is no genuine dispute as to a material fact and that as a matter of law Mitchell is not entitled to relief. *See Celotex*, 477 U.S. at 323. Mitchell's Amended Complaint alleges that the contents of the notice he received were

improper because Defendants failed to identify Wells Fargo, an alleged beneficiary to the Deed of Trust, in accordance with O.R.S. § 86.771(1). The Amended Trustee's Notice of Sale, however, disclosed Chase, and the subsequent assignment to CHF, as the relevant beneficiaries of the Deed of Trust. Defs.' Ex. 7, ECF 23-7 at 4.

Mitchell provides no evidence, and makes no argument in his response brief, demonstrating that Wells Fargo was a beneficiary to the Deed of Trust and thus should have been included in the Amended Trustee's Notice of Sale. Mitchell's allegations in his Amended Complaint are not sufficient to rebut Defendants' motion. *See Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Even assuming that failure to list the name of a beneficiary in a Deed of Trust constitutes improper notice under O.R.S. § 86.764(1) and would as a result violate the notice requirement under O.R.S. § 86.797, Mitchell has produced no evidence to support his allegations regarding Wells Fargo.[5]

---

[5] Mitchell's substantive arguments in his response brief did not address the allegations relating to Wells Fargo as a beneficiary to the Deed of Trust but, instead, argued that the Court should consider whether Defendants violated the OTDA by failing to provide proper notice under O.R.S. § 86.764 pursuant to a different subsection. Specifically, Mitchell argues that the contents of the notice of sale must "[s]tate the default for which the foreclosure is made." O.R.S. § 86.771(4). Mitchell argues that the default amount in the Notice of Sale was incorrectly listed, and that in fact, Mitchell's "default amount had been improperly inflated by approximately $5,000." Pl.'s Resp. Br., ECF 26 at 6.

Mitchell did not plead a cause of action based on Defendants' alleged violation of O.R.S. § 86.771(4) and, instead, Mitchell's First Claim for Relief specifically seeks "Declaratory Relief Invalidating Nonjudicial Foreclosure Due to Violations of ORS [86.771(1)]." Am. Compl. ¶¶ 26-38. Mitchell may not allege a new cause of action in response to a summary judgment motion. *See, e.g.*, *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (finding that when allegations are not in the complaint, "raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Wasco Prods. Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("'Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.'") (quoting *Fleming v. Lind-Waldock & Co.*,

Accordingly, the Court need not address the substantive question of whether the notice required under O.R.S. § 86.797 simply requires that a grantor *receive service* of the notice, or whether O.R.S. § 86.797, and the notice requirements of O.R.S. § 86.764 referenced in O.R.S. § 86.797, also require that a person receive service of a notice that is in compliance with the substantive requirements of O.R.S. § 86.771.[6] Defendants conclusively establish that there is no

---

922 F.2d 20, 24 (1st Cir. 1990)); *Pickern v. Pier I Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (new issues raised in response to summary judgment were not appropriate for consideration). Mitchell also failed to file a motion to amend his complaint. For these reasons, the Court declines to address Mitchell's new theory of liability.

[6] Beginning with Judge Panner's decision in *Mikityuk v. Northwest Trustee Services, Inc.*, 952 F. Supp. 2d 958 (D. Or. 2013), courts within this district have found that O.R.S. § 86.797 bars a challenge to a completed non-judicial foreclosure sale where notice was properly served. *See, e.g.*, *Liu v. Nw. Tr. Servs., Inc.*, 2014 WL 657000, at *3-4 (D. Or. Feb. 19, 2014) (Brown, J.) (granting a motion for summary judgment on a plaintiff's post-sale challenge to a non-judicial foreclosure because the plaintiff received "notice of the foreclosure sale within the time required under the Oregon Trust Deed Act"); *Baricevic v. Mortgage Elec. Registration Servs., Inc.*, 2014 WL 297091, at *2-3 (D. Or. Jan. 24, 2014) (Mosman, J.) (holding that a plaintiff's claim challenging a final non-judicial foreclosure was barred because the plaintiff received the notice required under O.R.S. § 86.764); *Collette v. Sutherland*, 2014 WL 203922, at *1-2 (D. Or. Jan. 15, 2014) (Aiken, J.) (holding that a completed trustee's sale barred a plaintiff's challenge to a non-judicial foreclosure where the plaintiff did not "allege improper service of the Notice or *any failure to provide him with information pertaining to his default* or right to cure said default" (emphasis added)).

The Court notes Judge Panner's description of the important dual purpose of the OTDA to: (1) "provide 'creditors with a quick and efficient remedy against a defaulting grantor'"; and (2) "'protect the grantor against the unauthorized loss of its property and to give the grantor sufficient opportunity to cure any default.'" *Mikityuk*, 952 F. Supp. 2d at 965, 966 (quoting *Staffordshire Invs., Inc. v. Cal-Western Reconveyance Corp.*, 209 Or. App. 528, 542 (2006)). The text of the notice of sale provision referenced in O.R.S. § 86.797, however, contains several important components: a 120-day time requirement, a content requirement prescribed by O.R.S. § 86.771, and a service requirement pursuant to the processes described in O.R.S. § 86.764. In balancing the notice requirements against the interest of finality in O.R.S. § 86.797, the *Mikityuk* opinion found that, in the legislature's view, "certainty and finality trump the risk . . . of a wrongful sale of property." 952 F. Supp. 2d at 967. The notice requirements referenced in O.R.S. § 86.797 "function to give people whose interest in property could be affected by a pending trust deed foreclosure and sale notice of the sale sufficiently in advance of the sale to enable them to act in their interest." *NW Prop. Wholesalers, LLC v. Spitz*, 252 Or. App. 29, 33, (2012). Whether O.R.S. § 86.797 functions as a bar to a completed non-judicial foreclosure where some of the information required under O.R.S. § 86.771 has been omitted from the notice of sale and

genuine dispute as to a material fact regarding Mitchell's claim for wrongful foreclosure as alleged. The Court grants Defendants' motion for summary judgment on Mitchell's first claim for relief.

## B. Mitchell's Claim for Breach of Contract

Defendants also move for summary judgment on Mitchell's second claim for relief, alleging breach of contract. In his Amended Complaint, Mitchell alleges that between "September 1, 2006 and February 15, 2008, the monthly payments on Plaintiff's loan more than doubled, increasing from $3,679.33 to over $8,000." Am. Compl. ¶ 40. Mitchell alleges that this increase was in excess of any amount described or allowed under the Note, caused Mitchell to default on the Note, and resulted in damages to Mitchell. *Id.* ¶¶ 41-45. Defendants respond that there is no admissible evidence to support Mitchell's breach of contract claim.

To state a claim for breach of contract under Oregon law, a "plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996) (quotation marks omitted). Here, Mitchell contractually agreed pursuant to the Note and Deed of Trust to make monthly mortgage payments. Defs.' Ex. 3, ECF 23-3 at 2-15. As of September 2007, Mitchell was in breach of these agreements by failing to make his payments. Defs.' Ex. 4, ECF 23-4 at 1.

The time frame alleged in Mitchell's Amended Complaint states that his mortgage payments were inflated at some time between September 1, 2006 and February 15, 2008. Am. Compl. ¶ 40. If Mitchell's mortgage payments were inflated before his default in September

---

materially affects a grantor's ability to protect the grantor's interests need not be resolved here because there is no factual support for the specific allegations presented in Mitchell's Amended Complaint.

2007 in violation of his contractual rights, he may have a viable claim. The evidence submitted by Defendants, however, conclusively establishes two facts that entitle Defendants to summary judgment: (1) the reason for Mitchell's September 2007 default was due to his dispute with the Oregon Board of Naturopathic Medicine; and (2) the timing of Mitchell's correspondence with Chase relating to adjusting his monthly payments occurred after Mitchell was in default.

Regarding the cause of Mitchell's default, on December 10, 2013, Mitchell responded to Defendants' first set of interrogatories. Defs.' Ex. 2, ECF 23-2. Defendants' Interrogatory No. 3 asked Mitchell to describe the circumstances surrounding his failure to make monthly mortgage payments beginning in 2007. *Id.* at 3. In response, Mitchell wrote:

> We are not certain of when the first payment was missed. Certainly Chase has that information. Our season of financial hardship arose as a *direct result* of a dispute with the Oregon State Naturopathic Board [the Oregon Board of Naturopathic Medicine] early in 2006 over my health & wellness practice and whether it came under their jurisdiction. Though we won the dispute and in the settlement, we were cleared to continue our practice in May of 2007, we had suffered over $300,000 in financial losses and about $60,000 in legal fees. Our income effectively had dropped from about $200,000 in our first year of business to Zero. The economic crash and downturn in the housing [market] prevented us from liquidating our investment properties to help us recover and we were forced to file bankruptcy in 2008.

*Id.* at 3-4 (emphasis added). This testimony is corroborated by Mitchell's Home Affordable Modification Program Hardship Affidavit, which Mitchell submitted to Chase on May 18, 2009. Defs.' Second Ex. 3, ECF 28-3. In his Hardship Affidavit, Mitchell makes no mention of being in default because of an alleged increase in his mortgage payments, and instead, specifically references his dispute with the Oregon Board of Naturopathic Medicine. *Id.* at 2-4. These facts establish that Defendants did not cause Mitchell's default, and Mitchell has failed to show a genuine dispute of material fact.

Second, Defendants' evidence regarding a possible increase in Mitchell's payment obligation shows that Chase only engaged in negotiations to increase Mitchell's mortgage payments after he was in default. Defendants' Interrogatory No. 6 asked Mitchell to explain the factual basis for his assertion that between "September 1, 2006 and February 15, 2008, the monthly payment on Plaintiff's loan was more than doubled, increasing from $3,679.33 to over $8,000." Defs.' Ex. 2, ECF 23-2 at 5. Mitchell responded: "We received letters to the increase in payments. I kept only a small fraction of the correspondence I received from Chase and the other parties involved in the loan, the vast majority of which are from after the foreclosure started. Those documents I retained are included in my response to the request for production." *Id.* Mitchell did not state when he received the letters from Chase that allegedly increased his payment before Mitchell was in default.

Defendants also deposed Mitchell on November 20, 2013. Defs.' Ex. 1 ("Mitchell Dep."), ECF 23-1. At the deposition, Defendants asked Mitchell about paragraph 40 of his Amended Complaint and if those allegations referred to a particular conversation. Mitchell Dep. at 33:9-15. In response, Mitchell explained: "We had a letter from Chase. We've tried to discover where that letter is, we have not been able to find it. But it was a letter from Chase stating that the payment would be—it was $8,000 and something. I don't remember the exact amount." Mitchell Dep. at 33:16-20. Defendants next asked: "Do you recall if that letter was issued after your first missed payment?" *Id.* at 33:21-22. Mitchell stated that he did not recall. *Id.* at 33:23. Mitchell also stated that he did not generally recall the timeline of when he received the letter. *Id.* at 33:24-34:1. Mitchell's evidence and testimony are insufficient to create a genuine dispute regarding the timing of the letters that he alleges he received from Chase that increased his monthly mortgage payment obligation. Mitchell also testified that Andrew North, a Chase representative, spoke

with Mitchell about the increased payments. *Id.* at 34:6-8. Mitchell was unable to recall when that conversation occurred or if the discussion of increased payment obligations was meant to help Mitchell catch up with previously missed payments after his default. *Id.* at 34:10-22.

Defendants submitted a letter from CHF to Mitchell dated October 29, 2008, which disclosed information regarding a possible modification to Mitchell's loan. Defs.' Second Ex. 4, ECF 28-4. In that letter, CHF noted that it was responding to Mitchell's "request for assistance" and that CHF "may consider [Mitchell's] loan for possible modification," which would "allow [him] to bring [his] account current by paying only a portion of the total delinquency at this time." *Id.* at 1.  Defendants also submitted evidence that Andrew North only began his contact with Mitchell after the date of his default, specifically "on or about October 3, 2008." Decl. of Christina M. Domoslawski ¶ 2, ECF 29.

This evidence conclusively demonstrates that Defendants did not contact Mitchell to change or increase his payments until after he defaulted on the Note. Thus, Mitchell was not in "full performance" and "lack of breach" of the Note at the time Chase may have contacted Mitchell to increase his monthly mortgage payments. *See Slover*, 144 Or. App. at 570. As the moving party, Defendants met their "initial responsibility of informing the district court of the basis for [their] motion." *See Celotex*, 477 U.S. at 323. Defendants also demonstrated that there is an absence of evidence to support Mitchell's claim. *See id.* Moreover, Mitchell failed to designate "specific facts showing there is a genuine issue for trial." *See Anderson*, 477 U.S. at 250. Mitchell relies on his Amended Complaint and his deposition testimony as rebuttal evidence. In responding to a motion for summary judgment, however, Mitchell can no longer rest on mere allegations or denials in his pleadings or argue that a "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322-23; *Matsushita*,

475 U.S. at 586. The ambiguity in Mitchell's deposition testimony does not lead to the conclusion that "a fair-minded jury" could find that Chase did in fact increase Mitchell's mortgage payment obligations *before* his default. *See Anderson*, 477 U.S. at 252. At most, this evidence of uncertainty by Mitchell is merely "a scintilla of evidence in support of the plaintiff's position," and is insufficient evidence "on which the jury could reasonably find for the plaintiff." *Id.*

The Court finds that Defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court grants Defendants' motion for summary judgment on Mitchell's second claim for relief.

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment (ECF 20). Mitchell's first claim for relief alleging wrongful foreclosure and second claim for relief alleging breach of contract are DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED**.

DATED this 30th day of April, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge